CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 02, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Gavin Simpson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:24-cv-00094 |
| | ) |
| | ) |
| Portfolio Recovery Associates, LLC, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on Plaintiff Gavin Simpson's motion to strike Defendant Portfolio Recovery Associates' ("PRA") affirmative defenses, (Dkt. 44), motion for judicial notice, (Dkt. 60), and motion to strike deposition testimony and impose sanctions, (Dkt. 114). For the reasons stated below, the court will deny both of Simpson's motions to strike. The court will grant in part and deny in part Simpson's motion for judicial notice.

## I.   Background

On July 3, 2024, PRA brought a debt collection action against Simpson in the General District Court for the County of Rockingham for failure to pay $9,683.67 due under a credit account in his name. (Dkt. 8 at 13–17.) The General District Court dismissed PRA's debt collection action with prejudice on October 4, 2024, after PRA's counsel for the action did not appear. (*Id.* at 9 (displaying a warrant in debt with handwritten notes of dismissal "w/ prejudice," and "Def. present & requested dismissal – Plaintiff not present").)

On October 11, 2024, Simpson filed a complaint against PRA in the Circuit Court for Rockingham County. (*Id.* at 3–8.) In the complaint, Simpson claim that PRA falsely reported the "non-existent" $9,683.67 debt using Simpson's social security number. (*Id.* at 5–6.) He alleged five "legal arguments" against PRA: (1) Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), (2) Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, (3) constructive fraud, (4) credit defamation and injurious falsehood, and (5) *res judicata*. (*Id.* at 7.)

PRA removed the case to federal court on November 12, 2024. (Dkt. 1.) About a week later, PRA answered the complaint and denied Simpson's allegations. (Dkt. 6.) After a procedural dispute about Simpson's initial request for leave to amend, the Honorable United States Magistrate Judge Joel C. Hoppe granted Simpson's unopposed motion for leave to amend his complaint on June 2, 2025. (Dkt. 31.) Simpson's amended complaint brought five counts, similar to those in his original complaint: (1) fraudulent misrepresentation and deceptive practices, (2) constructive fraud, (3) defamation, (4) violation of the FCRA, and (5) identity theft. (Am. Compl. at 3–4 (Dkt. 32).) He requested $500,000 in compensatory and punitive damages, as well as "declaratory judgment finding Defendant's actions unlawful" and "injunctive relief prohibiting further unauthorized collection and reporting activities by Defendant." (*Id.* at 3.)

PRA filed an answer to the first amended complaint on June 17, 2025, which denied Simpson's allegations and raised ten affirmative defenses. (Answer (Dkt. 42).) The following week, on June 23,[1] Simpson moved to strike the "boilerplate affirmative defenses." (Pl.'s Mot.

---

[1] There are often discrepancies between the dates included in Simpson's filings and the actual dates on which Simpson's documents were filed via CM/ECF. Throughout this memorandum opinion, the court references the dates on which the documents were filed in CM/ECF.

to Strike Affirmative Defenses at 1 (Dkt. 44) [hereinafter "Mot. to Strike 1"].) Simpson first argues that PRA's answer was filed six days late and "without an accompanying motion to extend the filing deadline." (*Id.*) Additionally, Simpson asserts that PRA's ten affirmative defenses were "insufficient under federal pleading standards and should be appropriately struck pursuant to Rule 12(f)." (*Id.*) Simpson asks the court to strike PRA's affirmative defenses from its answer. (*Id.* at 1–3.) He also requests that the court "[d]eem admitted all well-pleaded allegations of the First Amended Complaint under Rule 8(b)(6) where no sufficient denial has been properly presented." (*Id.* at 3.)

In two separate filings made on July 7, PRA responded to Simpson's motion to strike, (Def.'s Resp. in Opp. Mot. to Strike 1 (Dkt. 51) [hereinafter "Def.'s Mot. 1 Resp."]), and filed an amended answer, (Am. Answer (Dkt. 52)). In its response brief, PRA contends that each of its affirmative defenses provides fair notice to Simpson and thus should not be struck under Rule 12(f). (Def.'s Mot. 1 Resp. at 4–5.) PRA argues that Simpson failed to meet the burden of showing prejudice to the moving party. (*Id.* at 5–6.) Additionally, PRA insists that there is no basis for the court to find that its responses to Simpson's allegations are insufficient. (*Id.* at 3–4.) Simpson filed a reply brief on July 14, 2025. (Pl.'s Reply in Supp. Mot. to Strike 1 (Dkt. 55) [hereinafter "Pl.'s Mot. 1 Reply"].)

On August 4, 2025, Simpson filed a motion "for judicial notice and for preclusive effect of prior state-court dismissal." (Mot. for Judicial Notice (Dkt. 60).) He asks the court to take judicial notice of the Rockingham General District Court decision depicted in the "Warrant in Debt (DC-412) final-disposition page." (*Id.* at 1.) He also argues that, given the state court's dismissal, this court should hold that PRA is precluded from "re-litigating debt/standing." (*Id.*

- 3 -

at 4.) He requests a range of "targeted relief," including granting "partial summary judgment . . . that PRA lacked any enforceable right to collect the alleged account from Mr. Simpson," "a preclusion/in-limine order barring PRA from re-litigating ownership/standing to collect that account," and limiting further discovery by requiring PRA to amend or strike discovery responses that "presuppose a live debt or PRA's standing." (*Id.* at 1, 6.) Simpson's "supplemental filing" on August 8 attached the warrant in debt along with returns of service and a clerk's letter from the initial debt collection action. (Dkt. 64 at 1.) PRA responded on August 18, arguing that a motion for judicial notice is not the place to request a legal finding as to *res judicata*, (Dkt. 68 at 3), and that the dismissal with prejudice does not have the preclusive effect alleged by Simpson, (*id.* at 4–7). Simpson filed a reply brief on August 27. (Dkt. 69.)

Following additional discovery disputes, Simpson filed his first motion for summary judgment on September 2, 2025. (Dkt. 70.) Throughout September, Simpson proceeded to file several motions and briefs "in support of" this summary judgment motion. (Dkts. 71, 74, 81.) One of these filings included a "damages matrix," in which Simpson delineated his computation of his alleged economic losses, emotional distress, reputational harm, statutory damages, and punitive damages. (Dkt. 74-1 at 1–10.) He also asked the court for leave to file yet another summary judgment brief at the end of the month. (Dkt. 94.)

In response to Simpson's numerous summary judgment filings, on September 23, PRA moved to strike Simpson's "Supplemental Memorandum in support of his Rule 56 Motion," (Dkt. 81), or, in the alternative, moved for an extension of time to respond to the brief. (Dkt. 91.) On October 3, Judge Hoppe granted PRA's motion and denied Simpson's motion for

leave to file another summary judgment brief. (Dkt. 100.) Judge Hoppe's order explained that Simpson's three briefs in support of his motion for summary judgment "collectively exceed the Scheduling Order's page limit" of 25 pages and create confusion inhibiting orderly resolution of the motion. (*Id.* at 1.) Accordingly, the order struck each of the three briefs, (Dkts. 71, 74, 81), and instructed Simpson to file one brief in support of his summary judgment motion. (Dkt. 100 at 1–2.) Simpson filed the combined motion for summary judgment, (Dkt. 104), and memorandum in support, (Dkt. 105), on October 15.

The next day, PRA filed a motion for sanctions under Federal Rules of Civil Procedure 37 and 30(d)(2), requesting that the court sanction Simpson by dismissing this action with prejudice "or, in the alternative, requiring Plaintiff to pay the costs of his depositions and PRA's costs and attorneys' fees associated with the present Motion." (Dkt. 107 at 1.) The court will resolve this motion for sanctions, as well as Simpson's later cross-motion for sanctions, (Dkt. 121), and the parties' cross-motions for summary judgment, (Dkts. 104, 127), in a subsequent opinion and order.

Simpson filed his second motion to strike on October 22. (Pl.'s Mot. to Strike Dep. Test. (Dkt. 114) [hereinafter "Mot. to Strike 2"].) In it, he seeks to strike his own deposition testimony from September 24, 2025, pursuant to Federal Rules of Civil Procedure 26(b)(1), 26(c)(1), 30(d)(2), and 32(d)(3). (*Id.*) Simpson claims that the September 24 deposition was "futile and abusive" because of the court's earlier order, (Dkt. 100), striking his three summary judgment briefs. (Mot. to Strike 2 at 2.) He also asserts that parts of the deposition "inquired into matters barred by res judicata." (*Id.* at 3.) Finally, Simpson asks the court to impose $350 in sanctions on PRA "for seven hours of Plaintiff's wasted time." (*Id.* at 2.)

PRA filed an opposition brief on November 5, arguing that judicial estoppel does not apply because PRA had not even moved to strike the damages matrix before the deposition. (Def.'s Resp. in Opp. to Mot. to Strike 2 at 2–3 (Dkt. 124) [hereinafter "Def.'s Mot. 2 Resp."].) PRA also argues that *res judicata* and collateral estoppel do not preclude discovery about the state court debt collection action. (*Id.* at 4–5.) Finally, PRA explains that Judge Hoppe's appearance and rulings during Simpson's first deposition was proper. (*Id.* at 5–6.) Simpson filed a "Reply in Support of Motion to Strike (Dkt. 114) and Request for Sanctions" on November 14, 2025. (Dkt. 132.)

### III.   Analysis

### A.   First Motion to Strike (Dkt. 44)

The court denies Simpson's first motion to strike PRA's affirmative defenses. "It is well settled that an amended pleading supersedes the original, and motions directed at superseded pleadings must be denied as moot." *Dykes v. Portfolio Recovery Assocs., LLC*, 306 F.R.D. 529, 530 (E.D. Va. 2015). Because Simpson did not refile a motion to strike following PRA's amended answer, his initial motion to strike PRA's affirmative defenses is moot.[2] *See Swarey v. Desert Cap. REIT, Inc.*, No. DKC 11–3615, 2012 WL 4208057, at *5 (D. Md. Sept. 20, 2012) ("Plaintiffs' Rule 12(f) motion to strike the affirmative defenses asserted by Defendant Stephenson has been rendered moot by Stephenson's filing of an amended answer."); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural

---

[2] Although this motion is technically moot, the court will substantively analyze the motion as applying to PRA's amended answer. In fact, PRA filed a substantive response to Simpson's motion to strike alongside their amended answer, (Dkt. 51), which suggests that they assumed Simpson's initial motion still applied to their amended answer. Moreover, Simpson filed a reply brief in support of his original motion addressing the amended answer and raising arguments about the amended answer that he had included in his initial motion. (Dkt. 55.)

- 6 -

rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

If the court were to construe Simpson's motion to strike as applying to PRA's amended answer,[3] PRA's affirmative defenses would nevertheless survive a Rule 12(f) motion to strike. Under Federal Rule of Civil Procedure 12, the court may strike from a pleading any "insufficient defense" or matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Rule 12(f) motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (cleaned up). An affirmative defense is "insufficient" under Rule 12(f) if it is "clearly invalid as a matter of law." *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 467 (M.D.N.C. 2013). The affirmative defense under attack must be viewed "in a light most favorable to the pleader." *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).

The Fourth Circuit has not directly addressed whether the heightened pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply to affirmative defenses. *Warren v. Tri Tech Lab'ys, Inc.*, No. 6:12-cv-00046, 2013 WL 2111669, at *7 n.7 (W.D. Va. May 15, 2013); *see Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc.*, No. 5:19-cv-00087, 2020 WL 1644985, at *2 (W.D. Va. Apr. 2, 2020). But lower courts, including this one, have declined to apply the heightened pleading standard

---

[3] As PRA acknowledges in their response to Simpson's motion, PRA filed their original answer, which was due on June 16, 2025, one day late. (Def.'s Mot. 1 Resp. at 3 n.1.) However, PRA filed their amended answer in a timely manner on July 7, 2025. (Am. Answer.) The court will consider the amended answer and will not strike it. *See Khadka v. Rajamani*, No. 1:08-cv-01320, 2009 WL 910849, at *1 (E.D. Va. Apr. 1, 2009) (denying a motion to strike an answer filed one day late).

to affirmative defenses. *See Tippman Eng'g, LLC*, 2020 WL 1644985, at \*2; *Henderson v. General Revenue Corp.*, No. 7:17-cv-00292, 2019 WL 4148172, at \*3 (W.D. Va. Aug. 30, 2019). Instead, an "affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff *fair notice* of the nature of the defense." *Warren*, 2013 WL 2111669, at \*7 n.7 (quoting *Clem v. Corbeau*, 98 Fed. App'x 197, 203 (4th Cir. 2004)) (emphasis added). To survive a motion to strike, an affirmative defense need only be "'contextually comprehensible' when viewed in light of Plaintiff's factual pleadings." *Warren*, 2013 WL 2111669, at \*7 (quoting *Odyssey Imaging, LLC v. Cardiology Associates of Johnston, LLC*, 752 F. Supp. 2d 721, 727 (W.D. Va. 2010)).

In their amended answer, PRA includes seven affirmative defenses.[4] The affirmative defenses adequately place Simpson "on notice in 'short and plain terms' of the nature of the defenses" and are contextually comprehensible in this case. *Warren*, 2013 WL 2111669, at \*7. In fact, the first, second, third, fifth, and seventh affirmative defenses—"Failure to State a Claim," "Statute of Limitations," "Waiver," "Standing Under FCRA," and "Punitive Damages"—are nearly identical to the affirmative defenses that this court has refused to strike in prior cases and has previously held provide sufficient notice to the plaintiff. (Am. Answer at 5–6); *see* Answer to Complaint at 5–6, *Warren v. Tri Tech Laboratories, Inc.*, No. 6:12-cv-00046 (W.D. Va. May 15, 2013); Answer to Amended Complaint by General Revenue Corporation at 20–22, *Henderson v. Gen. Revenue Corp.*, No. 7:17-cv-00292 (W.D. Va. Aug. 30, 2019).

---

[4] PRA voluntarily withdrew the (1) arbitration, (2) setoff damages, and (3) *res judicata* and/or collateral estoppel affirmative defenses that it raised in its original answer. (Def.'s Mot. 1 Resp. at 4 n.2.) These three defenses are also omitted from PRA's amended answer. (Am. Answer at 5–6.) To the extent that Simpson's motion to strike the affirmative defenses address these withdrawn defenses, such issues are moot.

The court notes that PRA's "failure to state a claim" affirmative defense is not technically an affirmative defense. *See Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012). Since any argument about Simpson's failure to state a claim attacks the defects in Simpson's prima facie case rather than introducing new facts or legal arguments, "failure to state a claim" is more properly categorized as a defense. Nevertheless, this court will "exercise its wide discretion" and refuse to resort to the "drastic remedy" of striking the "failure to state a claim" affirmative defense, as PRA's arguments in its motion for summary judgment do not even include Simpson's failure to state a claim under Rule 12(b)(6). *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)); (*see generally* Dkts. 127, 128.)

As applied to this case, Simpson argues generally that "boilerplate" and "vague legal labels, disconnected from the case" do not provide fair notice under Rule 8(c). (Pl.'s Mot. 1 Reply at 5.) Aside from making broad statements about fair notice, Simpson erroneously focuses his analysis on rebutting each defense on the merits. (*See* Mot. to Strike 1 at 2 (arguing that "Statute of Limitations – claims were timely filed within the prescribed statutes of limitations," "Waiver / Release – no waiver or release agreement has been alleged or executed by Plaintiff," "FCRA Standing – Plaintiff properly alleges both concrete and statutory injuries sufficient to establish standing under FCRA," and "Punitive Damages – Complaint sufficiently pleads PRA's willful and malicious conduct").) But the court does not resolve these extrinsic factual issues on a motion to strike. *See Bonumose Biochem LLC v. Zhang*, No. 3:17-cv-00033, 2018 WL 3733651, at *5 (W.D. Va. Aug. 6, 2018) (citing *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 611 (D. Md. 2018)); *Thornhill v. Aylor*, No. 3:15-cv-00024, 2016 WL 258645, at

*2 (W.D. Va. Jan. 20, 2016) ("A disputed question of fact cannot be decided on motion to strike.") (cleaned up).

Simpson also has fair notice of the nature of the other two affirmative defenses, "Truth/Accuracy of Information," and "Preemption." PRA's "Truth/Accuracy" defense states that "Plaintiff's claims fail to the extent that they are barred because all information PRA communicated to any third person regarding Plaintiff was true." (Am. Answer at 5.) In the context of Simpson's own defamation claim, in which he alleges that PRA "knowingly published false and defamatory information about Plaintiff to third-party credit reporting agencies," (Am. Compl. at 2), PRA's defense is easily comprehensible. Further, rather than arguing that the truth defense does not provide him fair notice, Simpson attempts to argue on the merits of the claim, stating that "defense directly contradicted" its truth defense "by admissions and documentary exhibits." (Mot. to Strike 1 at 2.) For similar reasons, Simpson has fair notice of PRA's preemption defense—that Simpson's "state and/or common law claims fail to the extent these claims are preempted by the Fair Credit Reporting Act," (Am. Answer. at 6)—especially in the context of his own concurrent state fraud, state defamation, and Fair Credit Reporting Act claims, (Am. Compl. at 2–3).[5]

## B. Motion for Judicial Notice and Miscellaneous Relief (Dkt. 60)

In his motion "for judicial notice and for preclusive effect of prior state-court dismissal with prejudice; and for targeted discovery relief," Simpson first asks the court to judicially

---

[5] Simpson also asks the court to "[d]eem admitted all well-pleaded allegations" of his complaint "where no sufficient denial has been properly presented." (Mot. to Strike 1 at 3.) Simpson specifically argues that PRA's responses to allegations about "the state court dismissal, post-dismissal credit reporting, and use of Plaintiff's personal information are incomplete." (Pl.'s Mot. 1 Reply at 4.) But the court does not find any instance in PRA's amended answer where PRA has made "evasive denials" or failed to sufficiently deny Simpson's allegations.

notice the final disposition of the Rockingham County General District Court proceeding between PRA and Simpson (Case No. GV24001547-00). (Dkt. 60 at 1 (cleaned up).) A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Under this rule, "a federal court may consider matters of public record such as documents from prior state court proceedings." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

Here, the court will take judicial notice of the uncontested fact that PRA's debt collection action in state court was dismissed with prejudice. (*See* Dkt. 64-1; *see* Dkt. 68 at 3 ("PRA admits that the Court may take judicial notice of the fact that the debt collection action was dismissed with prejudice . . . .").) However, Simpson's request for judicial notice, to the extent it asks the court to find "preclusive effect," must be denied. "[R]equest for judicial notice is not the appropriate place to make a legal argument other than in favor of notice of the fact asserted." *Found. to Support Animal Prot. v. Vital Farms, Inc.,* No. 2:22MC23, 2023 WL 3446200, at *3 (E.D. Va. Apr. 3, 2023); *see also Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, No. CCB-16-0405, 2016 WL 7178300, at *9 (D. Md. Dec. 8, 2016) (denying a request for judicial notice where the documents "are not adjudicative facts—they are legal analysis").

Thus, the court will consider the merits of the parties' *res judicata* and collateral estoppel arguments in resolving their respective motions for summary judgment, but not here. Because the court does not yet rule on the effect of the state court dismissal on Simpson's claims and PRA's defenses, the court also denies Simpson's requests for various forms of relief in his motion for judicial notice. (*See* Dkt. 60 at 5–6 (seeking, among other forms of relief, partial

- 11 -

summary judgment under Rule 56 or a "preclusion/in-limine order barring PRA from relitigating ownership/standing to collect that account").)

### C. Second Motion to Strike and Requesting Sanctions (Dkt. 114)

The court denies Simpson's motion to strike testimony from his September 24 deposition. PRA did not violate any Federal Rules of Civil Procedure, constitutional provisions,[6] or other laws by asking Simpson questions about the calculation of his claimed damages or the state court debt collection proceedings underlying Simpson's own claims. Because the court finds that PRA did not perpetrate any discovery abuses, Simpson's request for sanctions pursuant to Federal Rule of Civil Procedure 30(d)(2) is also denied.

1. <u>The court will not strike deposition testimony about Simpson's claimed damages or the damages matrix.</u>

Simpson begins his second motion to strike by arguing that the court's October 3 order—striking, among other things, the damages matrix that Simpson included in one of his supplemental summary judgment briefs—rendered any deposition testimony derived from the matrix "inadmissible." (Mot. to Strike 2 at 6.) Federal Rule of Civil Procedure 26 defines the scope of discovery as including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In his amended complaint, Simpson claims that PRA owes him compensatory and punitive damages totaling $500,000. (Am. Compl. at 3.) Simpson must prove these damages to ultimately prevail on his claims against PRA. Therefore, as an initial matter, PRA's deposition questions about how

---

[6] Simpson references "due process violations" in his second motion to strike but provides no detail as to these alleged violations. (Dkt. 114 at 1, 2, 9.)

Simpson calculated his claimed damages amount are indisputably within the proper scope of discovery. (*See* Order (Dkt. 111).)

Further, the fact that Simpson's "damages matrix" had been stricken by the court after the deposition does not render PRA's questions about the matrix and its contents impermissible. First, Judge Hoppe's order striking the matrix, among other filings, was entered on October 3—nine days *after* Simpson's September 24 deposition. (Dkt. 100.) Therefore, the matrix had not yet been struck when PRA conducted Simpson's deposition. Second, PRA's motion to strike only asked to strike Simpson's second supplemental brief, (Dkt. 81), not the damages matrix. (Dkt. 91 at 1.) Despite Simpson's claims to the contrary, there was no PRA motion seeking to strike the matrix at the time of the contested deposition. Judicial estoppel is wholly inapplicable here, as there is no evidence that PRA "is asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding." *Snell v. Gustafson*, No. 3:21-CV-00024, 2025 WL 1434698, at *4 (W.D. Va. May 19, 2025).

Finally, to support his argument, Simpson cites cases he characterizes as prohibiting "discovery on dismissed claims."[7] (Mot. to Strike 2 at 6.) But the court's striking of Simpson's matrix was not a dismissal on the merits of any claims by either party; it merely served the purposes of (1) remedying Simpson's violation of the court's procedural rules and (2) organizing the motion for summary judgment filings to prevent confusion and inefficiency. (Dkt. 100 at 1–2.) Accordingly, the court will not strike the deposition questions about damages.

---

[7] Besides being inapplicable to Simpson's motion, these cited cases do not hold what Simpsons says they do.

2. <u>The court will not strike deposition testimony about the prior state debt collection action.</u>

Next, Simpson contends that PRA's "questions delving into the distinguished debt" violated the doctrine of *res judicata*, such that Simpson's responses to these questions must be struck. (Mot. to Strike 2 at 7.) However, *res judicata* "is not a proper ground for objection to discovery." *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 575 (D. Md. 2010). And as discussed above, the court has not yet ruled on whether the doctrines of *res judicata* or collateral estoppel apply in this case and what the effects are, if any. Because the court has not ruled that the previous state court dismissal renders discovery about the debt collection action irrelevant, and because Simpson's own claims center on the outcome of the debt collection action, the court will not strike any deposition testimony on the topic.

3. <u>The parties' conference with Judge Hoppe did not violate any Federal Rules or other legal principles.</u>

Simpson also argues that Judge Hoppe's intervention during the deposition "Prejudiced the Neutrality of the Examination." (Mot. to Strike 2 at 7.) PRA's call to Judge Hoppe's chambers during the deposition—in response to Simpson's refusal to answer questions—was not improper. Magistrate judges regularly assist and intervene in discovery disputes, including depositions. *See Stewart v. VCU Health Sys. Auth.*, No. 3:09CV738-HEH, 2011 WL 7281603, at *2–5 (E.D. Va. Nov. 22, 2011), *report and recommendation adopted*, No. 3:09CV738-HEH, 2012 WL 463561 (E.D. Va. Feb. 13, 2012), *aff'd*, 478 F. App'x 757 (4th Cir. 2012); *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 299 (E.D. Va. 2004) ("Further to assure that the depositions are properly circumscribed as herein indicated, the Court will be available to supervise or, if necessary, preside over depositions either directly or through a

Magistrate Judge."); *Maynard v. Whirlpool Corp.*, 160 F.R.D. 85, 87 (S.D.W. Va. 1995) ("Magistrate Judges in this district are generally available for relief by phone conference when disputes arise during the course of depositions . . . .").

Furthermore, the official deposition transcript, which is attached to PRA's motion for sanctions, does not comport with Simpson's description of the deposition in his second motion to strike. (*See* Dkt. 107-1.) The transcript shows that Judge Hoppe did not "direct[] [Simpson] to answer 'without equivocation,'" as Simpson claims he did. (Mot. to Strike 2 at 7.) In fact, Judge Hoppe only warned Simpson of the potential ramifications of refusing to answer questions relevant to his claimed damages: "[I]f you don't answer questions, this deposition could be reconvened and it could be at your expense. There also could be more serious sanctions, like excluding evidence and even more serious than that. So you need to answer the questions that are within your knowledge and not speculate." (Dkt. 107-1 at 24.)

## IV.    Conclusion

For the foregoing reasons, the court will **DENY** Simpson's motion to strike PRA's affirmative defenses, (Dkt. 44), and Simpson's motion to strike his deposition testimony and to impose sanctions on PRA, (Dkt. 114). The court will **GRANT in part** and **DENY in part** Simpson's motion for judicial notice. (Dkt. 60.) The court will take judicial notice of the Rockingham General District Court's October 4 dismissal with prejudice of PRA's debt collection action against Simpson, but the court will deny any further relief requested in Simpson's motion for judicial notice.

An appropriate Order will issue.

**ENTERED** this  2nd  day of December, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE