IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

12/19/2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

Gavin Simpson,                     )
                                   )
              Plaintiff,           )
                                   )
v.                                 )          Civil Action No. 5:24-cv-00094
                                   )
Portfolio Recovery Associates, LLC,)
                                   )
              Defendant.           )

**MEMORANDUM OPINION**

Plaintiff Gavin Simpson filed this action alleging that Defendant Portfolio Recovery Associates ("PRA") falsely reported a $9,683.67 debt under Simpson's name and personal information. (*See* Am. Compl. ¶¶ 5–10 (Dkt. 32).) This matter is before the court on Simpson and PRA's cross-motions for summary judgment, (Dkts. 104, 127), as well as Simpson's motion to "disregard/strike," (Dkt. 130). For the reasons stated below, the court will deny Simpson's motion for summary judgment, grant PRA's motion for summary judgment, and grant in part and deny in part Simpson's motion to disregard or strike.

## I.      Background[1]

### A.  Factual History

Defendant PRA is a company that purchases nonperforming loans and attempts to recover them from the debtor. (Vaughan Decl. ¶ 9 (Dkt. 119-1).) PRA purchased a group of Synchrony Bank accounts in July of 2023. (*Id.* ¶¶ 12, 15; *see* Dkt. 105-17 at 1.) The sale

---

[1] The following factual and procedural history is derived from the summary judgment record. Unless noted otherwise, the facts are undisputed. Facts not material to the issues are omitted.

transferred to PRA "the extent of [Synchrony Bank's] ownership [in] the Accounts as set forth in the Notification Files." (Vaughan Decl. ¶ 12.) PRA offers evidence suggesting that one of these accounts—specifically, a credit card account ending in -3386—is associated with the name Gavin O. Simpson.[2] (Dkt. 128-1 at 4, 8, 10–11; Vaughan Decl. ¶¶ 12–14.) On December 19, 2023, Scott & Associates, PRA's counsel for the state proceedings, sent Simpson a letter on behalf of PRA that demanded payment in full of the $9,683.67 due under the -3386 account. (Dkt. 105-19 at 1.)

On April 8, 2024, PRA filed a warrant in debt in Rockingham General District Court requiring Simpson to answer their civil debt collection claim. (Dkt. 8 at 9.) The General District Court set an initial return date of May 14, 2024. (*Id.*) PRA also filed a bill of particulars in the same court on July 3, 2024, which provided more detail about PRA's claims against Simpson. (*Id.* at 13–16.) In the bill of particulars, PRA alleged two causes of action: (1) "Suit on Debt/Account Stated," and (2) breach of contract. (*Id.* at 15–16.)

In July of 2024, Simpson submitted a dispute to three credit reporting agencies ("CRAs") about the $9,684 debt he allegedly owed first to Synchrony Bank, then to PRA. (*See* Dkts. 105-12, 105-13, 105-14; Dkt. 119-1 at 26–94.) PRA confirmed that they received "three dispute communications from [CRAs] Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion LLC regarding Mr. Simpson's Account" "on or

---

[2] Simpson attempts to argue that his account was not included in the July 2023 purchase. However, he offers no evidence to contravene the accuracy, authenticity, or validity of PRA's evidence. PRA presents (1) the "Sale Files" identifying the accounts PRA purchased from Synchrony Bank on July 31, 2023, (Dkt. 128-1 at 4, 10–11), (2) the Bill of Sale between Synchrony Bank and PRA on July 31, 2023, (*id.* at 4, 8), and (3) the "Load Data" displaying Simpson's personal identifying information as corresponding to the account listed on the Sale File, (*id.* at 10–11). *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

about July 5, 2024, July 8, 2024, and July 12, 2024." (Vaughan Decl. ¶¶ 17–18.)  In late July, the agencies responded to Simpson's dispute, stating that that the investigation was completed. (Dkt. 105-12 at 1; Dkt. 105-14 at 1.)  At least one of the CRAs "verified [the disputed item] as accurate." (Dkt. 105-12 at 1.)

A hearing was eventually set in the General District Court for October 4, 2024.[3]  (Dkt. 8 at 9.)  Scott & Associates, on behalf of PRA, sent a letter to the court on the day of the hearing, October 4, requesting a continuance of the hearing date.  (*Id.* at 10.)  Specifically, counsel stated: "Please allow this correspondence to serve as our request for continuance and confirmation of the fact that the hearing date in the above referenced matter has been changed from 10/4/2024 to another date and time as can be agreed upon by the parties and this honorable court." (*Id.*)  The court denied the request that same day, as evidenced by the handwritten note on the letter: "Reviewed continuance request – denied . . . 10-4-24." (*Id.*)  PRA and its counsel failed to appear at the October 4 hearing.  (*Id.* at 9.)  Thereafter, the court dismissed PRA's debt collection case with prejudice.  (*See id.* (displaying a warrant in debt with handwritten notes of dismissal "w/ prejudice," and "Def. present & requested dismissal – Plaintiff not present").)

The record does not contain any further explanation or reasoning from the state court as to why it dismissed the case with prejudice.  PRA and Simpson seem to agree that dismissal was entered was because counsel failed to appear in state court that day after requesting continuance.  (*See* Dkt. 105-3 at 2 (Simpson asserting that "PRA—despite having requested

---

[3] The parties seem to dispute the scheduling process for this October 4 hearing; Simpson states that "PRA appeared but requested a continuance, stating it was unprepared to proceed" at the initial return date, and the October 4 date was a "rescheduled trial date." (Dkt. 105-3 at 2.)  PRA, on the other hand, asserts that "[a]t the first return date in May 2024, the action was set for hearing for October 4, 2024." (Dkt. 68 at 1; Dkt. 119 at 1; Dkt. 128 at 2.)

the additional time—failed to appear and did not prosecute its claim.  As shown on the face of the certified record, the presiding judge dismissed the case **with prejudice** . . . .”); Dkt. 119 at 10 (PRA asserting that “the state court appears to have dismissed the collection action with prejudice as a sanction due to collection counsel’s late continuance request and failure to appear at the hearing”).)

PRA received notice of the state-court dismissal of PRA’s debt collection action and acknowledged the dismissal in its internal files on October 15, 2024.  (*See* Vaughan Decl. ¶ 23; Dkt. 133-2 at 1 (“Dismissal w/prejudice processed and forwarded to Client Liaison.”).)  This was the first dated entry in PRA’s internal notes that recognized the state court dismissal.  (*See* Dkt. 133-2 at 1.)  PRA then alleges that they “requested the consumer reporting agencies delete PRA’s reporting of Mr. Simpson’s Account” on October 24, 2024[4]—nine days after receiving notification of dismissal the debt.  (*See* Vaughan Decl. ¶¶ 23–25.)  PRA claims that it did not report the account to any of the CRAs after October 24.  (*Id.* ¶ 26.)  Further, PRA “can only request that a consumer reporting agency delete PRA’s reporting of an account but it is ultimately up to the consumer reporting agency to delete the account from its credit files for a given consumer.”  (*Id.* ¶ 25.)  However, Simpson argues that PRA continued to report the debt for 22 days after its October 15 notice of the debt, until “on or about November 6, 2024.” (*See* Dkt. 105 at 3; Dkt. 105-6 at 1; Dkt. 129-2 at 2.)

Simpson contends that removal of the PRA tradeline from his credit report caused his credit score to improve by around 70 points, (Dkt. 105 at 4), but his only evidentiary support

---

[4] The court addresses the dispute about the typographical error associated with this date in Section III.A below.  For the reasons discussed below, the court does not strike Ricky Vaughan’s declaration and recognizes PRA’s correction—that PRA alleges it requested deletion of Simpson’s debt reporting on October 24, 2024, not 2025.

for this claim is a set of screenshots from "Intuit creditkarma" discussing his TransUnion Credit report. (Dkt. 105-5 at 1 ("Between Nov 1, 2024 and Nov 6, 2024, your PORTFOLIO RECOVERY collections account was removed from your credit report."); Dkt. 105-6 at 1 ("We found 3 changes to your TransUnion credit report . . . +70 points").) The court agrees with PRA that the "Intuit creditkarma" screenshots are inadmissible hearsay; the documents contain out-of-court statements made by third-party "Intuit creditkarma" and are being offered "to prove the truth of the matter asserted." Fed. R. Evid. 801. Thus, the court will not consider this evidence in resolving the cross-motions. *See Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

## B. Procedural History

On October 11, 2024, Simpson filed a complaint against PRA in the Circuit Court for Rockingham County. (Dkt. 8 at 3–8.) He alleged that PRA falsely reported a non-existent debt under his name and social security number to Experian, Equifax, and TransUnion. (*Id.* at 5–6.) He alleged five "legal arguments" against PRA: (1) Fair Credit Reporting Act (15 U.S.C. § 1681s-2(b)), (2) Identity Theft and Assumption Deterrence Act (18 U.S.C. § 1028), (3) constructive fraud, (4) credit defamation and injurious falsehood, and (5) *res judicata*. (*Id.* at 7.)

PRA timely removed the case to federal court on November 12, 2024. (Dkt. 1.) PRA included the state court documents, including the General District Court's October 4 dismissal order, in its removal filing. (*See* Dkt. 1-2 at 11.) On June 2, 2025, the court granted Simpson's unopposed motion for leave to amend his complaint. (Dkt. 31.) On that same day, Simpson

filed an amended complaint raising five causes of action similar to those in his original state complaint: (1) fraudulent misrepresentation and deceptive practices, (2) constructive fraud, (3) defamation, (4) violation of the FCRA, and (5) identity theft.  (Am. Compl. ¶¶ 15–25 (Dkt. 32).)  Simpson requested $500,000 in compensatory and punitive damages, as well as "declaratory judgment finding Defendant's actions unlawful" and "injunctive relief prohibiting further unauthorized collection and reporting activities by Defendant."  (*Id.* at 3.)  PRA filed an answer to the first amended complaint on June 17, 2025, denying Simpson's allegations and raising ten affirmative defenses.  (Answer (Dkt. 42).)  On July 7, PRA filed an amended answer, (Am. Answer (Dkt. 52)), with only seven, not ten, affirmative defenses.

Following several discovery disputes, Simpson filed his first motion for summary judgment on September 2, 2025.  (Dkt. 70.)  Simpson filed several briefs "in support of" his summary judgment motion, (Dkts. 71, 74, 81), without leave from the court to file additional briefs.  The court struck the three briefs, which altogether exceeded the page limit imposed by the scheduling order, and instructed Simpson to file a single brief in support of his summary judgment motion.  (Dkt. 100 at 1–2.)

In accordance with the court's order, Simpson filed his "combined motion" for summary judgment, (Dkt. 104), and memorandum in support, (Dkt. 105), on October 15.  In it, Simpson only asks for summary judgment on his FCRA claim and a new FDCPA claim; his motion for summary judgment and memorandum in support do not seek summary judgment on his state law fraudulent misrepresentation, constructive fraud, defamation claims, or his "identity theft" claim.  (Dkt. 105 at 5–6.)  Simpson's summary judgment motion asks for various sanctions against PRA.  (Dkt. 104 at 2, 5–8.)  The motion also seeks resolution of

Simpson's Rule 72(a) objection, which the court resolved in an order following the midstream status conference on October 20, 2025. (Dkt. 111.) PRA responded in opposition to Simpson's motion for summary judgment and sanctions on October 29, 2025. (Dkt. 119.) On November 7, Simpson filed a reply in support of his motion for summary judgment. (Dkt. 129.)

On that day, PRA also filed a motion for summary judgment.[5] (Dkt. 127). PRA seeks summary judgment on each of Simpson's five claims and dismissal of the entire action with prejudice. (Dkt. 128.) Simpson filed a response on November 14. (Dkt. 133.) PRA replied one week later. (Dkt. 138.) Then, on November 26, 2025, Simpson filed a "sur-reply" to PRA's summary judgment motion without leave of court. (Dkt. 143.)

On November 7, Simpson also filed a motion "to disregard/strike under Rule 56(c)(4)" "the portions of PRA's declaration asserting a 2025 deletion/cessation timeline." (Dkt. 130.) PRA responded to the motion on November 21. (Dkt. 139.)

## II.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, a dispute is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022).

---

[5] PRA's motion for summary judgment was timely filed, as the court continued the trial and extended the dispositive motions deadline to November 7. (Dkt. 111.)

Accordingly, the court should only grant summary judgment if "no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990); *see also Anderson*, 477 U.S. at 250 (explaining that courts must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict").

When ruling on a motion for summary judgment, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets their initial burden, the burden shifts to the nonmoving party to establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). When determining whether a genuine issue of material fact exists, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013).

As here, when the court is evaluating cross motions for summary judgment, "the court must review each motion separately on its own merits." *G.D USA, Inc. v. U.S. Citizenship & Immigr. Servs.*, 531 F. Supp. 3d 966, 972 n.6 (E.D. Va. 2021) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). "[E]ach motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). "The court must deny both motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party

is entitled to prevail as a matter of law, the court will render judgment." *Sky Angel U.S., LLC v. Discovery Commc'ns., LLC*, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (cleaned up).

### III.    Analysis

**A. Simpson's Motion to Disregard or Strike Under Rule 56(c)(4) (Dkt. 130)**

Before turning to the motions for summary judgment, the court addresses Simpson's motion to strike the portions of PRA's brief in which PRA asserted that it requested deletion of the $9,683.67 tradeline on "October 24, 2025." (Dkt. 130 at 1; *see* Dkt. 129 at 3.) PRA includes this deletion date in its brief in opposition to Simpson's motion for summary judgment, Ricky Vaughan's declaration, and PRA's initial memorandum in support of PRA's motion for summary judgment. (*See* Dkt. 119 at 8; Vaughan Decl. ¶¶ 24–25; Dkt 128 at 9.) Simpson argues that the date is erroneous. (Dkt. 130 at 1.) In its response to Simpson's motion, PRA agrees that this was a typographical error, and that PRA in fact requested deletion of its reporting of Simpson's debt on October 24, 2024. (Dkt. 139 at 1.) PRA also resubmits Vaughan's declaration with corrections to the typographical error. (Dkt. 138-1 ¶¶ 16–23.) However, PRA opposes striking any portion of the declaration or briefs, as the error is "only potentially relevant to the issue of damages," which PRA argues Simpson has not proven. (Dkt. 139 at 2.)

PRA's "October 24, *2025*" references were clearly typographical errors. In the same summary judgment brief that includes the 2025 date, PRA alleges that it "requested Experian, Equifax, and TransUnion delete PRA's reporting of the Account on October 24, *2024*." (Dkt. 119 at 2 (emphasis added).) An October 2025 request of deletion would be entirely inconsistent with the case timeline as laid out by both parties—including Simpson's own

assertions that the tradeline was removed on November 6, 2024. (Dkt. 104 at 2; Dkt. 129 at 5.) The court will recognize the error and presume that PRA intended to state "October 24, 2024" instead of "October 24, 2025." The court expects that PRA and its counsel will take care to avoid any additional typographical errors in its future submissions.

Given the obvious nature of the error, the court will not strike PRA's brief or Vaughan's declaration. *See Jones v. Blair Wellness Center, LLC*, No. CV ADC-21-2606, 2022 WL 1082645, at *3 n.5 (D. Md. Apr. 11, 2022) (disregarding "typographical errors" in defendant's brief given the context and the contrary assertions in the rest of their brief that show they were mistakes); *Moses v. Powell*, No. 1:07-cv-894, 2008 WL 345598, at *2 (E.D. Va. Feb. 4, 2008) ("Although petitioner is correct that respondent's memorandum of law in support of the Motion to Dismiss contains some scrivener's errors, the presence of such errors is insufficient to warrant the striking of the timely-filed Motion to Dismiss or the Rule 5 Answer."); *Boyd v. Angelica Textile Servs., Inc.*, No. CA 3:10-872-JFA-PJG, 2011 WL 4368559, at *1 n.2 (D.S.C. June 9, 2011), *report and recommendation adopted*, No. 3:10-CV-872-JFA, 2011 WL 4368550 (D.S.C. Sept. 19, 2011), *aff'd*, 466 F. App'x 288 (4th Cir. 2012) ("The court finds that this obvious scrivener's error does not warrant the striking of Ligon's affidavit and observes that, in any event, the error was promptly cured.").

Simpson wants the court to apply "the sham-affidavit" rule to the facts of this case, but that rule is wholly inapplicable. The error was obviously a typographical one rather than a factual inconsistency fabricated "in the hope of creating an issue of fact" to survive Simpson's summary judgment motion. *Barwick v. Celotex Corp.*, 736 F.2d 946, 959 (4th Cir. 1984). Based on this reasoning, the court will also deny Simpson's request for partial summary

judgment on FCRA liability and any other requests in his "Rule 56(c)(4)" motion. (Dkt. 130 at 1; Dkt. 130-3.)

### B. Motions for Summary Judgment

Simpson moves for summary judgment as to two claims—one brought under the FDCPA, and one under the FCRA. (Dkt. 104.) PRA also moves for summary judgment, but as to all five claims in Simpson's amended complaint. (Dkt. 127.) When viewing the undisputed facts in a light most favorable to Simpson, the court concludes that no genuine dispute exists as to any material fact and PRA is entitled to judgment as a matter of law on all claims.

#### 1. Preclusion Doctrine

Simpson begins his motion for summary judgment by arguing that the October 4 state-court dismissal of PRA's debt collection action "extinguished PRA's claim under the doctrine of res judicata." (Dkt. 105 at 5.) But the doctrines of *res judicata* and collateral estoppel—also referred to as claim and issue preclusion, respectively—are inapplicable to this case for several reasons.

First, *res judicata* is an affirmative defense, typically raised by a defendant. *See* Fed. R. Civ. P. 8(c)(1); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998) ("Claim preclusion (res judicata), as Rule 8(c) of the Federal Rules of Civil Procedure makes clear, is an affirmative defense."); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("Res judicata and collateral estoppel [issue preclusion] are affirmative defenses that must be pleaded."). Plaintiffs can raise *res judicata* arguments in response to a defendant's counterclaims. *See Triumph Actuation Sys., LLC v. Eaton Corp.*, No. 1:11CV79, 2013 WL 5461814, at *2 (M.D.N.C.

Sept. 30, 2013) (granting plaintiff's motion to dismiss defendant's counterclaims "on the ground that they are barred under the doctrine of res judicata").  As the plaintiff in this case, Simpson brought claims against PRA.  (*See* Am. Compl.)  But PRA did not bring a single claim against Simpson following the initial state-court dismissal.  PRA only raised affirmative defenses and responded to Simpson's claims.  (*See* Am. Answer.)  In fact, Simpson first raised the issue of *res judicata* in his original complaint, (Dkt. 8 at 6), before PRA had even responded to Simpson's claims or raised any affirmative defenses.  Thus, it is unclear what "claims" Simpson is referencing when he argues that PRA's "claim" or "claims" should be precluded under *res judicata*.  (*See* Dkt. 105 at 5; Dkt. 104 at 4.)

In addition to being raised incorrectly in the complaint, the basic requirements of *res judicata* are not met in this case.  Simpson is concerned about PRA's "litigation of [the] extinguished debt" and the preclusive effect of the state court's dismissal with prejudice.  (*See* Dkt. 105 at 5.)[6]  Specifically, the state court dismissed PRA's "suit on debt/account stated" and "breach of contract" claims under Virginia state law.  (Dkt. 8 at 14–15.)  In determining "the preclusive effect of an earlier state court judgment on a new claim," the court applies the "preclusion law of the State in which judgment was rendered."  *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)).

---

[6] Simpson's motion for summary judgment contains both mischaracterized case citations and fabricated quotes.  While the court recognizes the hurdles that *pro se* litigants face when pursuing claims in court, submitting a filing containing false citations—whether created by generative artificial intelligence or not—is unacceptable.  Such a practice "causes an enormous waste of judicial resources," as courts must wade through misleading material.  *Powhatan Cnty. Sch. Bd. v. Skinger*, No. 3:24-cv-00874, 2025 WL 1559593, at *10 (E.D. Va. June 2, 2025).  These filings could also constitute a violation of Federal Rule of Civil Procedure 11 that warrants sanctions.  Given Simpson's *pro se* status, at this time, the court merely warns Simpson that if any of his future filings fabricate or misrepresent authorities, the court may order him to show cause why he should not face sanctions under Rule 11.  *See* Fed. R. Civ. P. 11(c)(3).

Therefore, the court applies Virginia's *res judicata* doctrine, which encompasses both claim and issue preclusion. *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 890 (Va. 2017).

> *Res judicata* is defined by Rule 1:6 of the Rules the Supreme Court of Virginia:
>
> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a).

The *res judicata* doctrine seeks to prevent parties from relitigating "the same cause of action or any part thereof which *could* have been litigated in the previous action." *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018) (cleaned up). Said differently, for claim preclusion to apply to any of PRA's "claims," PRA must have been able to raise them in the Rockingham General District Court proceeding. *See Kearney v. Robinson Land Tr.*, No. 09–228, 2010 WL 7373700, at *3 (Va. Cir. June 29, 2010) (holding that res judicata does not apply because "Plaintiffs could not have raised this claim in the GDC"); *D'Ambrosio*, 809 S.E.2d at 628 ("However, when the underlying conduct, transaction, or occurrence produces multiple legal claims, not all of which can be asserted at the time of the initial litigation, claim preclusion will not prohibit the previously unmaintainable claims from being raised in subsequent litigation."). That is not the case here. PRA's defenses against Simpson's FCRA and other state law claims did not exist until after the state court dismissal of PRA's claims against Simpson, and after Simpson filed his subsequent complaint against PRA. Thus, PRA could not have possibly raised any of their arguments and affirmative defenses in the initial state court proceeding,

when PRA was the plaintiff.  Claim preclusion does not apply to this case, and the court need not proceed to parties' arguments about whether the dismissal with prejudice constituted an adjudication on the merits or extinguished the debt.

Although Simpson does not explicitly assert *issue* preclusion in his briefs supporting his motion for summary judgment, he posits that "the with-prejudice dismissal controls the FCRA 'accuracy' analysis," (Dkt. 129 at 3), and "legally extinguishe[s] any claim PRA had to the alleged debt," (Dkt. 105 at 5).  He also argued in his earlier motion for judicial notice that the dismissal with prejudice precludes PRA from asserting "ownership" of or "standing to collect" the account at issue in the action.  (Dkt. 60 at 4.)  Because these arguments sound in issue preclusion, also known as collateral estoppel, the court will conduct a brief analysis to afford Simpson leniency.  But ultimately, the court concludes that collateral estoppel is also inapplicable here.

Collateral estoppel doctrine prohibits parties to an earlier action from litigating in a subsequent suit "any issue of fact actually litigated and essential to a valid and final personal judgment in the first action."  *Rawlings v. Lopez*, 591 S.E.2d 691, 692 (Va. 2004).  Collateral estoppel only bars litigation of an issue when: (1) the parties or their privies to the prior and subsequent proceedings are the same, (2) "the issue of fact sought to be litigated [was] *actually* litigated in the prior proceeding," (3) "the issue of fact [was] essential to the prior judgment," and (4) the prior action "resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied."  *Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 714 (Va. 2019) (emphasis added) (quoting *Glasco v. Ballard*, 452 S.E.2d 854, 855 (Va. 1995)).

Simpson has the burden of showing preclusion by a preponderance of the evidence. *See Frazier v. Frazier*, No. CL 2008-12548, 2021 WL 8315084, at *4 (Va. Cir. Aug. 17, 2021). But he does not even allege that the General District Court actually litigated the issue of whether Simpson *ever* owed PRA the $9,683.67 from a Synchrony Bank account. Similarly, there is no evidence that the issue of whether PRA has "ownership/standing to collect" the debt—which Simpson raised in his earlier motion for judicial notice, (Dkt. 60)—was actually litigated in state court.

"Under Virginia law, a default judgment can create collateral estoppel, but all the requirements of collateral estoppel must still be satisfied," including that "the factual issue sought to be litigated actually must have been litigated in the prior action." *Capital Hauling, Inc. v. Forbes*, 75 F. App'x 170, 171 (4th Cir. 2003) (unpublished table decision) (quoting *TransDulles Center, Inc. v. Sharma*, 472 S.E.2d 274, 275 (Va. 1996)); *see also Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009) (holding that collateral estoppel does not apply because "[t]he judgment was not a dismissal on the merits, but a dismissal for failure to prosecute"). Although the Rockingham General District Court proceeding did not result in a default judgment, its disposition of dismissal due to "collection counsel's failure to appear" for the October 4 hearing is at least partly analogous.[7] (Dkt. 105 at 11; *see id.* at 2.) Just like the proponent in *Capital Hauling, Inc. v. Forbes*, Simpson has not presented any state court filings or any details of the October 4 proceeding showing that "testimonial and documentary evidence was presented," or that "proof was presented" as to whether Simpson actually owed

---

[7] Notably, the General District Court's dismissal in this case may be even *less* likely to constitute "actually litigating" the issues than in cases with an entry of default judgment, as default judgment requires the court to "determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It appears that the state court made no such determination in this case.

PRA the alleged debt, whether PRA owned the debt, or whether PRA had standing to collect the debt. 75 F. App'x at 171 (quoting *Transdulles Center, Inc.*, 472 S.E.2d at 276); *see also Scales v. Lewis*, 541 S.E.2d 899, 901 (Va. 2001) ("In order to prove that a claim or issue is precluded by a former adjudication, the record of the prior action must be offered in evidence. Thus, consideration of facts outside of and not made a part of the record is improper." (cleaned up)).

The documents included in the state court record are unhelpful in clarifying whether the issue was actually litigated. (*See generally* Dkt. 8.) The Rockingham County General District Court clearly dismissed the case following PRA's failure to appear, but the court included no further detail as to the October 4 proceeding or any evidence presented in advance of October 4. (*Id.* at 9 (stating dismissed "w/ prejudice," and "Def. present & requested dismissal – Plaintiff not present"); *id.* at 10 (noting "[r]eviewed continuance request - denied – [signature] – 10-4-24")); *see Al-Majid v. Skyline House Unit Owners Assn., Inc.*, No. 162870, 2000 WL 977371, at *2 (Va. Cir. Feb. 14, 2000) (holding that an issue was not "actually litigated" because both sides offered conflicting testimony about the hearing and "[t]he record from the General District Court is similarly ambiguous, and therefore insufficient to invoke collateral estoppel"); *Frazier*, 2021 WL 8315084, at *6 ("None of the filings or orders from the March 2011, May 2011, or August 2020 proceedings indicates that the issue of the 2010 Order's validity was actually litigated, and [plaintiff] has not otherwise carried her burden to prove the contrary by a preponderance of the evidence.").

Given Simpson's failure to prove by a preponderance of the evidence that the debt validity, ownership, or standing issues were actually litigated, the court does not apply any form of preclusion when analyzing Simpson's motion for summary judgment.

2.  <u>FDCPA Claim</u>

Simpson does not bring any claims under the FDCPA in his amended complaint, which is the operative complaint in this case.  (Am. Compl.)  He does not even reference the FDCPA in his original state-court complaint.  (*See* Dkt. 8 at 5–8.)  "It is well-established that a plaintiff may not raise new claims without amending the complaint."  *Johnson v. Mays*, No. 7:22-cv-00342, 2024 WL 4112658, at *5 (W.D. Va. Sept. 6, 2024); *see Barclay White Skanska, Inc. v. Battellee Mem. Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("[P]laintiffs may not raise new claims without amending their complaints after discovery has begun.").  While the court has afforded Simpson great leniency as a *pro se* litigant, Simpson may not simply disregard these procedural rules to raise an entirely new claim.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").  Accordingly, Simpson's motion for summary judgment on the FDCPA claim is denied.

3.  <u>FCRA Claim</u>

Both Simpson and PRA move for summary judgment on the FCRA claim.  The court finds that Simpson's FCRA claims fail as a matter of law because Simpson did not dispute the accuracy of the debt with a CRA following dismissal of the debt collection action, and there is no genuine dispute of material fact as to whether PRA's response to his July reports was unreasonable.

*i.  Notification Requirement*

Simpson argues that PRA violated its duty under § 1681s-2(b) of the FCRA[8] by failing "for 33 days to correct or delete the tradeline" after the October 4 dismissal with prejudice. (Dkt. 105 at 5.)  PRA counters that Simpson did not meet the threshold requirements of a § 1681s-2(b) claim—a showing that the consumer reported the dispute to a CRA and the CRA notified the furnisher—such that the PRA's § 1681s-2(b) duties were not triggered.  (Dkt. 119 at 7–10.)

Section 1681s-2(b) imposes a series of duties on furnishers like PRA.  "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

---

[8] To the extent that Simpson seeks summary judgment on any other provisions of the Fair Credit Reporting Act, he may not proceed on such claims for the same reason that he may not seek summary judgment for the FDCPA claim—Simpson only alleged a violation of § 1681s-2(b) in his amended complaint.  (Am. Compl. ¶¶ 22–25.)

But as the statute notes, these furnisher duties are not triggered until the furnisher "receiv[es] notice pursuant to section 1681i(a)(2)" from the CRA. *Id.*; *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) (citing 15 U.S.C. § 1681i(a)(2)). In other words, to make out a claim under § 1681s-2(b)(1), the plaintiff must show that "*after the furnisher received notification of a consumer dispute from a CRA*, it failed to conduct a reasonable investigation of its records to determine whether the information previously provided was incomplete or inaccurate." *Perry v. Toyota Motor Credit Corp.*, No. 1:18CV00034, 2019 WL 332813, at *7 (W.D. Va. Jan. 25, 2019) (emphasis added).

Simpson does not provide any evidence that, following the state court's dismissal with prejudice, he reported an inaccuracy in his file to a CRA *or* that a CRA notified PRA of Simpson's dispute. Instead, he argues that PRA's internal business records, which include an October 15 entry acknowledging the state-court dismissal, indicate that PRA had notice of the post-dismissal inaccuracy. (Dkt. 129 at 2; Dkt. 105-27 at 12.) However, courts, including this one, have repeatedly held that § 1681s-2(b) "only authorizes a private right of action against a furnisher of information when the furnisher receives notice of a dispute *from a consumer reporting agency* and fails to properly investigate that report." *Murray v. Liberty University, Inc.*, No. 6:22-cv-00025, 2022 WL 4082483, at *3 (W.D. Va. Sept. 6, 2022) (emphasis added); *see McCauley v. Ally Bank*, No. 3:20-cv-00069, 2021 WL 955918, at *3 (W.D. Va. Mar. 15, 2021) ("Plaintiffs do not contend—either in their complaint or response brief—that they reported a dispute to a credit reporting agency or that a credit reporting agency notified [furnisher] of such dispute. Consequently, Plaintiffs have no plausible claim for relief under § 1681s-2(b).").

- 19 -

Simpson also argues that PRA had notice following its receipt of Simpson's "Cease and Desist letter" dated October 30, 2024, and filed with the Rockingham County Circuit Court on November 1, 2024. (Dkt. 105-10.) However, even direct communication from the consumer to the furnisher regarding the dispute does not trigger § 1681s-2(b) duties. *Campbell v. Wells Fargo Bank, N.A.*, 73 F. Supp. 3d 644, 651 (E.D.N.C. 2014) ("[N]otice by a consumer directly to the furnisher of the information does not trigger the furnisher's duties under section 1681s-2(b)." (quoting *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10-cv-981, 2010 WL 5178831, at *4 (E.D. Va. Dec. 14, 2010))).

Based on what is before the court, it is undisputed that Simpson did not contact a CRA following the October 4 state-court dismissal, and that no CRA contacted PRA post-dismissal regarding a dispute. Therefore, Simpson's claims that PRA violated § 1681s-2(b) by reporting the debt post-dismissal must fail.

    *ii.  Reasonableness of July Investigation*

Simpson did, however, contact the CRAs in July of 2024—several months before the state-court dismissal—to dispute "incorrect, derogatory or negative marks" on the CRA's credit reports involving eight different accounts, including the PRA -3386 account. (*See* Dkt. 119 at 1–2; Dkt. 105-12 (an excerpt of Simpson's TransUnion investigation report from July 30, 2024, confirming the accuracy of the disputed tradeline); Dkt. 105-13 (an excerpt of Simpson's Experian credit report noting a July 2024 dispute); Dkt. 119-1 at 3–4, 26–94 (copies of "Plaintiff's dispute correspondence" with the CRAs regarding 8 different accounts).) In his letter, he alleged that *the CRAs, not PRA,* violated three different federal statutes (15 U.S.C.

§ 6802, 15 U.S.C. § 1666b, and 15 U.S.C. § 1692cc[9]).  (Dkt. 119-1 at 27–30, 47–50, 67–70.)  In accordance with § 1681s-2, the CRAs then contacted PRA regarding the dispute in July.  (Vaughan Decl. ¶ 18 (stating that the CRAs gave PRA notice of Simpson's disputes "on or about July 5, 2024, July 8, 2024, and July 12, 2024").)

To make out a § 1681s-2(b)(1) claim based on the July dispute, Simpson must show that PRA's investigation was not "reasonable," meaning PRA failed to act with a "degree of careful inquiry" to ensure accurate information.  *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004).  In his initial brief supporting his motion for summary judgment, Simpson focuses on the inaccuracy of the report post-dismissal rather than demonstrating that PRA's July investigation procedures and *July* response confirming the accuracy tradeline were unreasonable.  (*See* Dkt. 105 at 5–6; Dkt. 104.)  He includes only a single conclusory assertion—in a "narrative" filing accompanying an attachment[10]—that PRA's verification of the account as accurate following the July dispute "is a direct violation of 15 U.S.C. § 1681s-2(b) (failure to conduct a reasonable investigation)."  (*See* Dkt. 105-13 at 3.)

Simpson makes specific allegations about the reasonableness of the PRA investigation in the attachments of his reply brief.  As evidence that the investigation was unreasonable, he cites two exhibits: (1) PRA's "compliance dashboard," (Dkt. 129-12), and (2) the automated consumer dispute verification ("ACDV") responses for the -3386 account, (Dkts. 129-13, 129-14).  First, the court notes that Simpson's reply brief is the first time he makes these arguments

---

[9] This last statutory provision that Simpson cites does not exist.  However, he quotes statutory language from 15 U.S.C. § 1681b in alleging the "15 U.S.C. 1692cc" violation.  (*See* Dkt. 119-1 at 28, 48, 68.)

[10] By including substantive arguments in these narrative explanations accompanying each exhibit, Simpson clearly exceeds the page limits for briefs set forth in the court's initial Scheduling Order.  (Dkt. 12 ¶¶ 10, 15.)  This is the second time the court has needed to reiterate the page limits and notify Simpson of his failure to abide by them.  (*See* Dkt. 100 at 1.)  The court warns Simpson that court orders are not suggestions and are intended to be followed.

about the ACDV and dashboard evidence.  Generally, "new evidence and new arguments are not permitted on reply," *In re Aflibercept Patent Litigation*, No. 1:23-CV-97, 2024 WL 3423047, at *36 (N.D.W. Va. July 9, 2024), as doing so "runs the risk of depriving of depriving a nonmovant an opportunity to respond," *De Simone v. VSL Pharm.*, 36 F.4th 518, 531 (4th Cir. 2022).

But even if the court were to exercise its discretion to consider this argument, *see id.*, Simpson's proffered "evidence" does not support his broad allegations of unreasonable investigation.  Simpson's "narrative" accompanying these exhibits, though difficult to comprehend, generally argues that the "blank" section entitled "Substantiation cases for Customer" and the use of the word "Same" in several fields on the ACDV proves that "[the dispute case] closings are boiler-plate" and that PRA "did no meaningful investigation."  (Dkt. 129-12 at 1–3; Dkts. 129-13, 129-14.)  Without any additional evidence explaining why and how these exhibits show unreasonableness in PRA's investigation, the court is unable to give this "evidence" much weight.

Further, a plaintiff "cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete."  *Burns v. Trans Union, LLC*, No. 4:18-cv-03120, 2019 WL 3890833, at *3 (D.S.C. Aug. 19, 2019) (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)).  Simpson does not point to any facts that PRA could have uncovered in July that establish the inaccuracy of the debt report.  The October 2024 state-court dismissal does not constitute such an uncoverable fact, as the state court had not

yet dismissed the debt collection at the time of PRA's investigation in July. Further, the record does not show any state court findings, even when the court ordered dismissal of the case, that the debt did not exist in July or that PRA's reporting was otherwise inaccurate. (*See* Dkt. 8 at 9–10.)

Additionally, "[w]hether a furnisher's investigation of its records is reasonable is shaped by the nature and specificity of the information provided to it by the CRA." *Perry v. Toyota Motor Credit Corp.*, No. 1:18-cv-00034, 2019 WL 332813, at *7 (W.D. Va. Jan. 25, 2019) (citing *Johnson*, 357 F.3d at 431); *see* 15 U.S.C. § 1681s-2(b)(1)(B) ("After receiving notice . . . the [furnisher] shall . . . review all relevant information provided by the consumer reporting agency. . . ."). Simpson's July dispute letters to the CRAs, which were then passed along to PRA, did not allege that PRA inaccurately reported any information about the -3386 account. Rather, Simpson discussed how TransUnion, Equifax, and Experian each "violat[ed] [his] privacy" by publishing "nonpublic personal information" on his credit profile "without [his] express written permission." (Dkt. 119-1 at 27–29, 47–49, 67–69.) He never once claimed that PRA was reporting a nonexistent or inaccurate debt under the -3386 account. In fact, he did not even challenge the *accuracy* of the reported -3386 debt in his letter to the CRAs; he only disputed the reporting of the information without his permission. Nevertheless, PRA investigated the account and verified the information as accurate. (*See* Dkt. 8 at 72.)

Finally, Simpson implies that the notice he provided to the CRAs in July imposed on PRA an ongoing duty to continue to investigate the accuracy of the debt, such that PRA was required to investigate the tradeline again in October without additional notice from a CRA.

- 23 -

(*See* Dkt. 105 at 5; Dkt. 129-13 at 2; Dkt. 133 at 6.)  Simpson does not offer any authority

supporting this proposition, and the court does not find such an ongoing duty existed.

### iii.  Inaccurate Information in July Report

To make out a claim under § 1681s-2(b)(1), in addition to showing that the furnisher

failed to conduct a reasonable investigation after receiving notice of a dispute, a plaintiff must

also "show that . . . the furnisher provided inaccurate information."  *Perry*, 2019 WL 332813,

at *7; *see Jarrett v. Experian Info. Sols., Inc.*, No. 3:20-cv-125, 2021 WL 1381132, at *5 (E.D. Va.

Apr. 12, 2021) ("Although § 1681s-2(b) does not specifically require an inaccuracy in a

furnisher's reporting, courts have found that a plaintiff must show furnishings of inaccurate

information to state a claim under § 1681s-2(b).").  The Fourth Circuit has also held that

"inaccuracy" under the FCRA encompasses cases where "the statement is presented in such a

way that it creates a misleading impression."  *Saunders*, 526 F.3d at 148.

Even if Simpson had presented evidence suggesting PRA's July investigation was

unreasonable, any FCRA claim about PRA's July reporting nevertheless fails, as Simpson does

not offer any evidence of inaccurate or misleading information in PRA's *July* reporting of the

-3386 debt.  In his briefs, he focuses on the inaccuracy of the *post-dismissal* reporting.  (*See* Dkt.

129 at 4–5 ("Continuing to publish an unqualified collection tradeline for ~22 more days [after

state-court dismissal] was unreasonable and misleading . . . ."); Dkt. 133 at 7, 12 ("[P]ortraying

a charged-off balance as an active, collectible obligation *after dismissal* materially misleads

creditors." (emphasis added)); *see also* Dkt. 105 at 6 (arguing that "[b]y continuing to report

and verify the tradeline for 33 days after dismissal with prejudice, PRA misrepresented that it

had a legal right to collect on an extinguished debt" under his FDCPA claim (internal citation

omitted)).)  But as of July 2024, the state-court dismissal of the debt had not yet occurred, (Dkt. 8 at 9), so Simpson cannot rely on the October dismissal to show that PRA's July response was inaccurate.  And since Simpson does not identify any other evidence suggesting that PRA inaccurately reported the -3386 account in July, he "fail[s] to make a sufficient showing on" the inaccuracy of PRA's July report, "an essential element of [his] case with respect to which [he] has the burden of proof."  *Celotex Corp.*, 477 U.S. at 323.

Ultimately, summary judgment is appropriate on the FCRA claim because Simpson does not provide evidence, aside from speculation, that PRA acted unreasonably when responding to the July dispute or that PRA inaccurately reported the debt in July.  *See, e.g.*, *Beachley v. PNC Bank, Nat. Ass'n*, No. CIV. JKB-10-1774, 2011 WL 3705239, at *4 (D. Md. Aug. 22, 2011) ("[Plaintiff] has made a bare statement in her opposition to [the furnisher's summary judgment] motion to the effect that [the furnisher] did not notify other CRAs of the outcome of its investigation, but has not supported that statement with any evidence.  Her assertion, with nothing more, is not sufficient to survive a motion for summary judgment.").  Moreover, it is undisputed that Simpson did not contact a CRA following the October 4 dismissal, such that PRA's § 1681s-2(b) investigation duties were not triggered again in October, post-dismissal.  Accordingly, there is no genuine dispute of fact as to the FCRA claim.  PRA is entitled to summary judgment on the FCRA claim.

4. <u>Fraud on the Court & Waste of Judicial Resources Claims</u>[11]

Simpson contends in his motion for summary judgment briefing that PRA intentionally concealed the prior state court dismissal. (Dkt. 105 at 6–7.) This assertion is entirely unsupported by the record. PRA attached the warrant in debt to its removal documents, which included the case disposition of dismissal with prejudice as well as the state court's denial of PRA's request for a continuance. (Dkt. 1-2 at 11–12.) Furthermore, Simpson's arguments seeking to show "PRA's abuse of the removal process and waste of judicial resources" are untenable. (Dkt. 105 at 8.) There is no evidence that PRA has wasted court time, engaged in "[d]iscovery ambush," filed duplicative briefs, or committed fraud upon the court. (*Id.* at 8–13.) The court denies Simpson's request to impose sanctions on PRA. (*Id.* at 6–7.)

5. <u>Fraudulent Misrepresentation, Constructive Fraud, Defamation, and Identity Theft Claims</u>

The court agrees with PRA that Simpson abandons his fraudulent misrepresentation, constructive fraud, defamation, and identity theft claims in his brief in opposition to PRA's motion for summary judgment. (*See* Dkt. 133 at 5.) He not only fails to address these claims on the merits, but he also affirmatively states that he is not "pursu[ing]" or "assert[ing]" the claims. (*Id.*) Specifically, his opposition brief states:

**3-5. Fraud/defamation theories.**
Not pursued. This brief proceeds on § 1681s-2(b).

---

[11] At times, Simpson appears to conflate his claim for fraudulent misrepresentation in his amended complaint with his claims that PRA has committed fraud on the court. (*See, e.g.,* Dkt. 143 ("For fraud and constructive fraud, PRA's concealment of the October 4, 2024 dismissal with prejudice in its removal papers . . . constitute misrepresentations relied upon to keep this litigation alive.").) The court notes that Simpson's amended complaint only raises allegations of PRA's previous false representations or negligent misrepresentations that Simpson owed a debt. (Am. Compl. ¶¶ 15–19.) The amended complaint does not allege fraud on the court, which is a separate claim. *See Lyons v. Ticer Greene*, No. 5:21-cv-00010, 2022 WL 2532460, at *10 (W.D. Va. July 7, 2022).

### 6. "Identity theft claim fails."

No standalone identity-theft claim is asserted; this brief seeks **Rule 26(c)** case-management relief for PII handling.

(*Id.*)

Simpson also declares that his amended complaint does not allege a "state-law identity theft claim" or a claim under 18 U.S.C. § 1028. (*Id.* at 7.) Simpson then "reframe[s]" his identity theft claim as part of his preexisting § 1681s-2(b) inaccuracy claim and claim for discovery relief under Rule 26(c). (*Id.*) Simpson disclaims any "Standalone Identity-Theft Claim," and asks the court to deny PRA's motion for summary judgment as moot. (*Id.*)

Although Simpson stated in his response brief that he is not pursuing or asserting the fraud, defamation, and identity theft claims, he did not need to affirmatively do so to abandon these claims. Mere "[f]ailure to respond to an argument made in a dispositive pleading results in a concession of that claim." *Lattimore v. Brahmbhatt*, No. 4:21-cv-00038, 2024 WL 26687, at *4 (W.D. Va. Jan. 3, 2024) (internal quotation marks omitted) (collecting cases). Courts have consistently granted summary judgment to the defendant when the plaintiff has abandoned their claims by failing to respond in the opposition brief. *See, e.g., id.*; *Lee v. Belvac Prod. Mach., Inc.*, No. 6:18-cv-00075, 2020 WL 3643133, at *9 (W.D. Va. July 6, 2020), *aff'd*, No. 20-1805, 2022 WL 4996507 (4th Cir. Oct. 4, 2022); *United Supreme Council, 33 Degree of Ancient & Accepted Scot. Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of United States v. United Supreme Council of Ancient Accepted Scot. Rite for 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018); *Bronitsky v. Bladen Healthcare, LLC*, No. 7:12-cv-147, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) ("Plaintiff's failure to oppose defendants' arguments made in support of their motion for summary judgment is fatal to plaintiff's claim."); *Crouch v. City of Hyattsville*, No. 09-2544, 2012 WL 6019296, at *8 (D. Md. Nov. 30,

2012); *Allen v. City of Dunn*, 708 F.Supp.3d 743, 757 (E.D.N.C. 2023) ("Because plaintiff does

not dispute defendants' evidence, and does not offer any argument in his briefing on this

count, the court grants defendants' motion [for summary judgment] on this claim.").

In his November 26 surreply, Simpson argues that he did not concede these claims.

(Dkt. 143.)  But Simpson did not seek leave of court before filing this surreply brief.  Pursuant

to Local Rule 11(c), a party may not file a surreply "without first obtaining leave of court."

W.D. Va. Civ. R. 11(c)(1) ("Unless otherwise directed by the Court, the opposing party must

file a responsive brief . . . , and the moving party may file a rebuttal brief . . . .  No further

briefs (including letter briefs) are to be submitted without first obtaining leave of court.").  The

court's initial scheduling order also prohibits "surreply briefs without prior leave of court."

(Dkt. 12 ¶ 14.)  Where leave is properly sought, courts generally allow for surreplies "only

when fairness dictates based on *new* arguments raised in the previous reply." *Jefferson v. Biogen

Idec Inc.*, No. 5:11-cv-237, 2012 WL 3629219, at *4 (E.D.N.C. Aug. 22, 2012) (quoting *DiPaulo

v. Potter*, 733 F.Supp.2d 666, 670 (M.D.N.C. 2010)) (emphasis added); *see also Lismont v.

Alexander Binzel Corp.*, No. 2:12-cv-592, 2014 WL 12527239, at *3 (E.D. Va. May 23,

2014) (cleaned up) ("Sur-replies . . . are highly disfavored, as they usually are a strategic effort

by the nonmoving party to have the last word on the matter.").

While the court affords deference to *pro se* plaintiffs, Simpson has been given ample

notice of this Local Rule, as the court has already ordered his extra briefs be struck as violative

of the same rule.  (*See* Dkt. 100.)  Further, PRA's argument that Simpson conceded his state-

law claims in his response brief, (Dkt. 133), does not present a new argument on the merits of

the claims; it is merely a response to Simpson's own apparent concession in his brief in

opposition. *See Gibbs v. Plain Green, LLC*, 3:17-cv-00495, 2017 WL 7693141, at *1 (E.D. Va. Oct. 31, 2017) ("Where the arguments made by a party in their reply brief are merely responses to new arguments made by a party in their response, a sur-reply is not appropriate." (cleaned up)); *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015). Accordingly, the court will not consider the arguments in Simpson's surreply.[12]

\* \* \*

When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "While we view evidence in the light most favorable to the nonmoving party, more than a scintilla of evidence is required and mere conclusory or speculative allegations are insufficient to withstand summary judgment." *Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 155 (4th Cir. 2020) (quoting *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018)) (cleaned up). Simpson's allegations and proffered evidence are insufficient to withstand summary judgment. There is no genuine issue of material fact on any of Simpson's claims, and the court will grant PRA summary judgment in full.

---

[12] Simpson's discussion of Vaughan's supplemental declaration in the surreply, (Dkt. 138-1), while technically responsive to new evidence, does not alter the court's earlier analysis in Section III.A or the court's denial of Simpson's request to strike the initial Vaughan declaration. Regardless of whether the court considers or strikes the supplemental declaration, this filing and the October date discrepancy does not bear on the court's ultimate conclusion that PRA is entitled to summary judgment on all claims. Further, to the extent that Simpson argues the error should impact Vaughan's credibility, the court does not make credibility determinations at the summary judgment stage. *See Conley v. Grigsby*, No. 7:22-cv-00027, 2023 WL 1868228, at *8 n.13 (W.D. Va. Feb. 9, 2023).

## IV.    Conclusion

For the foregoing reasons, the court will **DENY** Simpson's motion for summary judgment, (Dkt. 104), and will **GRANT** PRA's motion for summary judgment, (Dkt. 127). The court will **GRANT** in part and **DENY** in part Simpson's motion to disregard or strike under Rule 56(c)(4).  (Dkt. 130.)  The court will grant the motion to strike only insofar as it asks the court to disregard the typographical errors in PRA's briefs.  The court will not strike any of PRA's filings, and all other relief Simpson requested in the motion to strike will be denied.

An appropriate Order shall accompany this Memorandum

Opinion. **ENTERED** this <u>19th</u> day of December, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE